## Richmond.

### CITY OF RADFORD v. CLARK.

#### January 25, 1912.

1. MUNICIPAL CORPORATIONS—*Torts of Agents and Employees.*—In order to render a municipal corporation liable in damages for the torts of its agents and employees, it is necessary, among other things, that the injury complained of be caused by or result from an act done in the exercise of some power conferred upon it by its charter or other positive enactment.

2. MUNICIPAL CORPORATIONS—*Torts—Operation of Stone Quarry.*—In the absence of statutory authority, a municipal corporation has no power to operate a stone quarry, and is not liable for injuries resulting from its negligent operation by those employed by the municipality; and the imposition upon it of the duty to keep its streets in order does not authorize it to operate a stone quarry, within or without the corporate limits, for the purpose of obtaining stone to make or repair its streets.

3. MUNICIPAL CORPORATIONS—*Unsafe Streets—Blasting Near Street.*—Blasting in a stone quarry within sixty-five feet of a city street, causing a horse hitched to a vehicle in the street to run away and injure the occupant (conceding the operation of the quarry by the city to be a nuisance), is not a wrong for which the city is liable. Noises outside the limits of the highway, amounting to a public nuisance, are not a defect in the highway.

4. APPEAL AND ERROR—*Sustaining Demurrer—Final Judgment.*—Where a case was heard upon an amended declaration, it is presumed that the plaintiff has stated his case as strongly as the facts would permit, and this court, upon sustaining a demurrer to such declaration, will enter up final judgment for the defendant.

Error to a judgment of the Circuit Court of Montgomery county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Harless & Colhoun* and *H. C. Tyler,* for the plaintiff in error.

*Longley & Jordan,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The declaration in this action, brought by Mrs. Mollie P. Clark against the city of Radford, consists of five counts, which, after setting out that the defendant is a municipal corporation chartered by the legislature of Virginia, and charged with the duty of keeping its streets in a reasonably safe condition for use of the public, alleges that said defendant city was, on the * * * day of September, 1909, through its servants and agents, blasting with powder and other explosive material in, and getting out rock for use on its streets from, a rock quarry, at a distance of sixty-five feet from a street of the city known as Grove avenue, and that while the city was so engaged in blasting, on the date named, the plaintiff was driving along said street and within seventy-five feet of the point of the blasting, and without knowledge thereof on her part, when a succession of blasts were set off, frightening her horse, causing it to become unmanageable and suddenly to wheel around in the street, throwing plaintiff violently upon the ground, whereby she was seriously injured and her buggy and harness destroyed.

The neglect of the city to perform its duty of keeping its streets, and particularly Grove avenue, in reasonably safe condition for the use of travelers thereon is alleged in the five counts in plaintiff's declaration, as follows: The first count charges a failure to give warning of its intention to put off the blasts; the second charges a failure on the part of the city to cover its blasts; the third charges the employment by the city of unskillful, careless, and negligent servants; the fourth merely alleges damages to the buggy and harness; and the fifth combines the negligence alleged in the first, second, and third counts, and practically charges negligence on the part of the city in maintaining or failing to prevent a nuisance, resulting in injury to the plaintiff.

The defendant city demurred, in writing, to the declaration and each count thereof, which demurrer was by the court overruled, whereupon the plea of not guilty was entered and issue joined; and at a subsequent term of the court a trial by jury was had, resulting in a verdict and judgment against the city for $500 damages in favor of the plaintiff, with interest and costs, to which judgment this writ of error was awarded.

Of the eight assignments of error, we find it necessary to consider only the first, which is to the ruling of the court upon the demurrer to the declaration.

"In order to render a municipal corporation liable in damages for the torts of its agents and employees, it is necessary, among other things, that the injury complained of be caused by or result from an act done in the exercise of some power conferred upon it by its charter or other positive enactment." *Duncan v. City of Lynchburg,* 2 Va. Dec. 700, 34 S. E. 964, 48 L. R. A. 331; *Donable's Adm'r v. Town of Harrisonburg,* 104 Va. 533, 52 S. E. 174, 113 Am. St. Rep. 1056, 2 L. R. A. (N. G.) 910, and authorities cited in those cases.

In the first of the cases just cited the opinion by Buchanan, J., defines what powers, under the settled law, a municipal corporation can exercise, and none other, and it was there held that the city of Lynchburg, either under its charter provisions or the general law relating to such corporations, had no power or authority to create and maintain a nuisance resulting from the operation of a rock quarry outside of the city's limits, although the rock quarried was for use in the construction and maintenance of roads which the city was authorized to construct and maintain, the nuisance complained of having been created and continued by the agents or employees of the city while engaged in a work which was without its corporate powers.

In *Donable v. Harrisonburg, supra,* the injury sued for resulted from the operation of a rock quarry outside of the corporate limits of the town, the stone gotten out to be for use upon the streets of the town; but it was there also held that there could be no recovery for the injury, because the operation of the rock quarry was *ultra vires,* for the reasons (1) that neither the charter nor the general law gave the town authority to operate a rock quarry, and (2) because the operation of the quarry was carried on outside of the corporate limits.

It has been repeated in the authorities that it might be convenient and even profitable for a municipal corporation, in order to perform certain duties imposed upon it as such corporation, to own and operate a rock quarry or other like undertakings, yet it has no power to do so unless in express words conferred in its

charter, or necessarily or fairly implied in or incidental to the powers expressly granted.

In this case, as in *Duncan* v. *Lynchburg* and *Donable* v. *Harrisonburg, supra,* to operate a rock quarry was neither necessary, fairly implied in, nor incident to the duty of the city of keeping its streets in a reasonably safe condition, nor essential to the declared objects and purposes of the corporation. We fail to see how a different rule of law is to be applied where the injury sued for resulted from an unauthorized act of a municipality, done within its corporate limits, from that applied by this and other courts, as well as sanctioned by the ablest law writers, to cases in which the tort was committed outside of the corporate limits, for the tort committed either in the one or the other case flows from an *ultra vires* act.

Neither the charter of plaintiff in error, city of Radford, nor the general laws of the State, authorize the operation, either within or without its corporate limits, of a rock quarry.

It is contended for defendant in error that, although there is no allegation or complaint made in her declaration that the street on which she received her injuries was unsafe by any defect therein, she is nevertheless entitled to recover for her injuries because the street was made unsafe by the operation of the rock quarry located sixty-five feet therefrom.

The authorities very generally hold that noises outside of the limits of the highway, amounting to a public nuisance, are not a defect in the highway.

The allegation was made in the case of *Lincoln* v. *City of Boston,* 148 Mass. 578, 20 N. E. 329, 12 Am. St. Rep. 601, 3 L. R. A. 257, that on the day of the accident to the plaintiff cannon were fired in Boston Common, near Charles street, which rendered said street, on which plaintiff was driving, unsafe, and was a public nuisance; that the Common was owned and controlled by the city, upon which, by the mayor acting as its agent, the firing of the cannon was licensed; but the opinion of the court sustaining the demurrer to the declaration said: "Annoying and even dangerous as such firing may be, an adjoining householder could not maintain an action against the city, and the plaintiff stands no better than an adjoining owner would."

To the same effect is the opinion of the Supreme Court of Wisconsin in *Hubbell* v. *City of Virogua*, 67 Wis. 343, 30 N. W. 847, 58 Am. Rep. 866, where the action was to recover damages for an injury received while passing along one of the streets of the city, caused by a ball of a gun fired from within a shooting gallery adjoining the sidewalk, but not within the boundaries of the street or sidewalk, the declaration charging that the operating of the shooting gallery, which was licensed by the city, was an obstruction to the free and safe travel of the public on and along a street. In the opinion of the court, holding the city not liable, it is said: "The shooting gallery was neither in the street nor within the boundaries of the sidewalk, but outside of the same, upon private property, and no more obstructed the sidewalk than any other building adjoining such walk."

In the case just cited, as in the case before us, the contention was made that the city was liable because it knowingly permitted a public nuisance to exist in the city adjacent to a public street, which endangered persons traveling upon the street; but with respect to this contention the court's opinion says: "An action will not lie against a municipal corporation for not suppressing a public nuisance within the municipality when such nuisance is not created nor maintained by the expressed authority of the municipality, and when such public nuisance is not the result of some act done, or neglected to be done, in the performance of a duty imposed upon the municipality by law, such as repair of streets, constructing sewers, water, or other public works, the municipal corporation is not liable for injuries caused to persons or property of the citizens by the criminal acts of individuals, unless made liable by statute."

The further contention of the learned counsel in this case, that plaintiff in error is liable "for maintaining and not preventing a nuisance, resulting in injury to plaintiff," is equally without merit. Leaving out of view the fact that there is no allegation in the declaration, or in any count thereof, that plaintiff in error had knowledge, actual or constructive, of the unsafe condition of its streets, the operation or control of a rock quarry and blasting therein, situated sixty-five feet or more from the street upon which defendant in error received her injuries, was not a positive

·or ministerial duty, but a governmental, legislative, and dis-
cretionary duty, for which the city (plaintiff in error) cannot
be held liable. *Jones* v. *Williamsburg,* 97 Va. 722, 34 S. E. 833,
47 L. R. A. 294, and authorities cited.

Conceding that the operation of the rock quarry complained
·of in this case was a nuisance, plaintiff in error created it without
power or authority conferred upon it by its charter or other
positive enactment, and it follows that it could not be held liable
for not preventing the nuisance, since the alleged nuisance (the
rock quarry) was sixty-five feet or more from the street, and not
·connected in any way with the physical construction of the street.

An examination of the cases cited for defendant in error dis-
·closes that they all practically deal with the question of a nuisance
*per se,* such as the obstruction of the street itself by the erection
·of objects therein, as in *City of Richmond* v. *Smith,* 101 Va. 161,
43 S. E. 345, and in like cases, or the carrying on of a dangerous
business that no amount of care, reasonable foresight, or prudence
·could have safeguarded against, as were the facts appearing in
*Wilson* v. *Phœnix Power Co.,* 40 W. Va. 413, 21 S. E. 1026, 52
Am. St. Rep. 890. Neither those cases, nor the line of cases
to which they respectively belong, apply to the facts alleged in
the declaration in this case.

The authorities cited above hold (1) that a city is not liable
for its failure to pass ordinances prohibiting bicycle riding upon
sidewalks or coasting upon its streets (*Jones* v. *Williamsburg,*
·*supra*), or (2) the firing of cannon near a street, or (3) the firing
of a gun in a shooting gallery licensed by the city to operate
·adjacent to and outside of a street, resulting in injury to a traveler
upon the street; and it follows, necessarily, that a city cannot
be held liable for its failure to pass an ordinance to prevent or
·safeguard the firing of blasts in a rock quarry sixty-five feet
or more from its streets and upon private property. See also
*Farrell* v. *Inhabitants, &c.,* 69 Me. 72, and cases cited.

For these reasons we are of opinion that the demurrer to the
declaration and each count thereof should have been sustained,
and in view of the fact that it is to be presumed that defendant
in error has made the strongest presentation of her case which
the facts permit, and that it could not be bettered if leave were

given to amend, this court, entering such judgment as the circuit court ought to have rendered, will sustain the demurrer and enter a final judgment for plaintiff in error.

WHITTLE, J. (dissenting):

The following material facts are set out in the declaration: While the defendant in error, Mrs. Mollie P. Clark, was driving in her buggy along one of the streets of Radford, the employees of the city, without notice or warning of any kind, set off three uncovered blasts in a rock quarry operated by the city for the purpose of obtaining material with which to repair the streets. The quarry was situated inside the corporate limits and within sixty-five feet of the street, and was seventy-five feet from the point of accident. The noise from the explosions, together with the falling rocks in the street and upon the vehicle, frightened the horse, and caused it suddenly to turn and run away, over-turning the buggy and inflicting upon the plaintiff the injuries of which she complains.

These allegations were proved at the trial, and thereupon the jury awarded the plaintiff $500 damages.

Upon the theory that the act of the city in thus operating the rock quarry was an *ultra vires* act, for which the municipality could not be held liable in damages, this court reversed the judg-ment of the trial court and sustained the demurrer to the declara-tion.

In the two Virginia cases (*Duncan* v. *City of Lynchburg*, 2 Va. Dec. 700, and *Donable* v. *Harrisonburg*, 104 Va. 533) relied on, in part, to sustain this ruling, the rock quarries in question were both located *outside* the city limits, which fact seems to have exercised considerable influence with the court.

The charter of Radford and the general law impose upon the city the imperative duty of keeping its streets in reasonable repair, and I should be loath to hold that such grant of power and imposition of responsibility does not carry with it as a necessary and fairly to be implied incident the power to take rock and other needful material from its contiguous property to enable the city to discharge that duty. It is matter of common knowledge

that cities and towns throughout the country resort to such sources of supply in opening, grading, and repairing streets, and to deny them that privilege would in many instances occasion intolerable inconvenience and expense.

But I think the action is maintainable on another ground. The conceded duty which rests upon all municipalities to keep their streets in reasonably safe condition would be but half discharged were they permitted to suffer dangerous operations to be so negligently conducted in the immediate vicinity of such streets as to jeopardize the safety of the traveling public along the same. Such works as imperil human life and safety are classified as public nuisances. And in *City of Richmond* v. *Smith,* 101 Va. 161, it was held: "If a city, without legislative authority, authorizes the erection of a nuisance in one of its streets, it is liable in damages for the injuries resulting therefrom. The city cannot escape liability merely because it exceeded its powers in authorizing the nuisance."

Blasting, it is true, is not *per se* a nuisance; but blasting near a highway or street becomes a nuisance when it is conducted in such a manner as to endanger the safety of travelers along such highway or street. *City of Paris* v. *Commonwealth,* (Ky.) 93 S. W. 907.

In 28 Cyc. 1292, n. 38, the reason for the rule is stated thus: "*Nuisances In or Near Public Street—In General.*—The doctrine of the liability of a municipality for failure to abate a nuisance in or near a public street arises out of the rule enforced in those jurisdictions that a municipal corporation is bound to keep its streets and sidewalks in a reasonably safe condition, and that failure to perform this duty constitutes a breach of ministerial duty, and the liability does not rest upon a failure to perform a judicial duty of abating a nuisance. *Dalton* v. *Wilson,* 118 Ga. 100. And upon this principle it is held that if the nuisance is in or near a public street, so as to endanger the safety of travelers thereon, a municipality will be liable for any special damage suffered by reason of the existence of the nuisance and the failure to abate the same. *Dalton* v. *Wilson, supra; Parker* v. *Macon,* 39 Ga. 725; *Moore* v. *Townsend,* 76 Minn. 64."

As the owner of property, a municipality is amenable for its

proper use. "The corporation of the city of New York has no more right to erect and maintain a nuisance on its lands than a private person possesses." *Bower* v. *New York*, 3 Barb. (N. Y.) 254, 258.

In this aspect of the case, sustaining the demurrer involves the incongruity that if a city suffers a third party to operate a rock quarry in a negligent manner, so near to one of its streets as to inflict injury upon a traveler thereon, it is liable in damages; yet, if it does the same act by its own servants, it is not liable. A course of reasoning which leads to such result can hardly be sound.

If the act were *ultra vires*, the underlying principle upon which the city would be liable is that, being charged with the duty to keep its streets in reasonably safe condition, it is estopped to set up the defense that the street was rendered unsafe by a nuisance of its own creation, which it had no authority to maintain.

I am of opinion that the judgment ought to be affirmed.

*Reversed.*