ARTHUR T. POPE, ADMINISTRATOR, *vs.* THE CITY OF
NEW HAVEN ET ALS.

Third Judicial District, New Haven, January Term, 1916.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

For the negligent performance of a purely governmental duty municipal corporations in this State are not liable, unless made so by statute.

A governmental duty may devolve upon a municipality through its charter as well as by the terms of a general statute, and by permissive, as well as by mandatory or imperative, language, if the municipality sees fit to act under the former.

In celebrating Independence Day as authorized by its charter, a city is engaged in performing a public governmental function, and therefore is not liable for an injury caused by the negligence of its servants while giving a display of fireworks, which formed a feature of such celebration, unless the act of discharging the fireworks is in itself intrinsically dangerous.

Though explosives of many kinds may be said to be intrinsically dangerous, their proper use is not necessarily or ordinarily so.

The only corporate advantage that can accrue to a city from a free, public celebration of Independence Day, is the pleasure and patriotic feeling excited in those who attend it; and this is obviously not sufficient to rob the celebration of its governmental character and convert it into a money-making enterprise for the pecuniary benefit of the city, and thereby render the city liable for the negligent acts of its agents while carrying on the celebration.

Argued January 21st—decided November 8th, 1916.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate and alleged to have been caused by the defendants' negligence, brought to the Superior Court in New Haven County where the defendant city's demurrer to the complaint was sustained (*Webb, J.*), the plaintiff's motion for permission to amend the complaint denied, and judgment rendered dismissing the complaint as against the city, from which the plaintiff appealed. *No error.*

*George E. Beers* and *Frederick C. Russell,* for the appellant (plaintiff).

*Charles Kleiner,* with whom was *Henry H. Townshend,* for the appellee (defendant city).

THAYER, J.   The complaint alleges that, under authority conferred by its charter, the city of New Haven made an appropriation for the purpose of the celebration of the day to be observed as Independence Day, July 5th, 1915, and thereafter, by way of such celebration, sent up from the New Haven green in said city of New Haven certain bombs which were intended to explode in the air in such a way as to diffuse different colored lights.   One of these, it is alleged, contained a fuse which was defective or damp, which fact was or ought to have been known to the city and its agents who were sending up the bombs, and was negligently sent up by them and failed to explode in the air but exploded after it reached the ground, and inflicted the injury complained of.

The substantial ground of the city's demurrer is that the city in sending up the bomb was engaged in the performance of a public governmental duty from which it received no pecuniary benefit or advantage, and for negligence in the performance of which no statutory liability is imposed.

It is well settled in this State that municipal corporations are exempt from liability for the negligent performance of a purely public governmental duty unless made liable by statute.   *Hewison* v. *New Haven,* 37 Conn. 475, 483; *Udkin* v. *New Haven,* 80 Conn. 291, 296, 68 Atl. 253.   The question is, was the city, in celebrating Independence Day as alleged in the complaint, engaged in the performance of such a duty? July 4th or, when that date falls upon Sunday, July 5th,

is made a public holiday, called Independence Day, by our statute. General Statutes, § 4364. All or nearly all of the other States have similar statutes. While there is no United States statute making a similar provision, the different departments of the government recognize, and have recognized since the government was established, July 4th as a national holiday. Throughout the country it has been recognized and celebrated as such. These celebrations, calculated to entertain and instruct the people generally and to arouse and stimulate patriotic sentiments and love of country, frequently take the form of literary exercises consisting of patriotic speeches and the reading of the Constitution, accompanied by a musical program including patriotic airs, sometimes preceded by the firing of cannon and followed by fireworks. That such celebrations are of advantage to the general public and their promotion a proper subject of legislation, can hardly be questioned. From the nature of the case it is apparent that in the present instance the city could derive no pecuniary or other special advantage from such a celebration. It might more nearly affect its own inhabitants and those of the immediate vicinity than the more remote public; but so would the erection of a public schoolhouse for the education of the children of the city, and no one would for that reason now claim that the erection of the schoolhouse, under authority of a charter or statute, was merely for the profit or special benefit of the city. Still less can it be claimed that a celebration conducted under authority of charter or statute, like the one in question, was for the pecuniary or special benefit of the city and not in performance of a public duty. When governmental functions are intrusted to the agency of municipalities they perform those functions within their territorial limits, but this does not deprive them of their public governmental

character. The celebrations authorized by the defendant's charter are public ones only.

A governmental duty may be imposed or authorized as well by charter as by general law. The latter may more clearly indicate the public policy, but where it appears that the duty referred to is a governmental one, a private as well as a public Act may confer it. In *Jewett* v. *New Haven*, 38 Conn. 368, where the city charter empowered the city to provide for the preservation of the city from fires, it was held that it imposed a public duty, for the public welfare, upon the city. In *Mead* v. *New Haven*, 40 Conn. 72, power was given the city by its charter to appoint a steam boiler inspector, and it was held that the city in making the appointment was discharging a public governmental duty. The present city charter is a public Act, but we do not consider that as affecting the situation. The cases cited show that a public governmental duty may be imposed upon a municipality by its charter as well as by a public Act.

Nor does the fact that the charter does not impose an imperative duty upon the city to appropriate money to the purposes of the celebration, but merely permits it to be done, change the character of the act done. In each of the cases referred to the duty was not imposed but was permissive only, and it was held that its exercise, when the city had acted under the authority, was the performance of a public duty. The same was held in *Tindley* v. *City of Salem*, 137 Mass. 171, upon the authority of which this case was decided in the trial court. As there said, the motive and object are the same in such cases, though in the one the legislature determines the necessity and expediency of the act to be performed, and in the other the necessity and expediency are left to be determined by the municipality. That case in all respects parallels the one before us, except that the law under which the appropriation for

the celebration was made was a public law applying to all towns. All the questions raised in this case are therein fully discussed.

That the city was engaged in the performance of a governmental duty in sending up the bombs as a part of the celebration, would not excuse it from liability for injuries resulting therefrom if the act of discharging them was in itself intrinsically dangerous. *Colwell* v. *Waterbury*, 74 Conn. 568, 573, 51 Atl. 530. But it is not alleged that the discharging of the bombs was in itself intrinsically dangerous. The allegation is that "a bomb of the character of that hereinbefore referred to, even with a perfect fuse, is intrinsically dangerous, and the act of discharging said bomb" (that is, the bomb with a damp and defective fuse) "was a negligent act." The injury is claimed to have been caused by the negligent act of sending up a bomb which was, and which the city and its servants knew or ought to have known was, defective. It appears from the complaint that the injury was due to the fact that the defective bomb did not explode in the air as it was expected to do, but, because of the damp or defective fuse, failed to explode until it reached the ground near the place where the intestate was located viewing the celebration. Many things are intrinsically dangerous the use of which with proper care under proper circumstances is not intrinsically dangerous. Gunpowder, dynamite, firearms, the firecrackers and other squibs used in celebrations, may be said to be intrinsically dangerous, but the proper use of them, ordinarily, is not so. Where the master or principal orders the use of such agencies under such circumstances that their use is intrinsically dangerous to others, the master is responsible for injuries resulting from such use. If the act ordered as commonly performed with the dangerous instrumentalities is not in itself dangerous to others, injuries resulting

from the servant's negligent use of such instrumentalities are not imputable to the master.

It is alleged that the display of fireworks took place on the public green in the defendant city and in dangerous proximity to certain of the city streets, and it has been argued that this allegation shows that the act of discharging the bombs was intrinsically dangerous and constituted a nuisance for which the city is responsible. As pointed out already, there is no allegation that the injury resulted from such a cause, and it appears that the intestate was not a traveler upon the streets and that she was not upon the street when injured but was a spectator at the celebration upon a vacant lot across the street from the place where the defective bomb was discharged. It is useless to discuss the question whether, if the plaintiff had alleged negligence in discharging bombs from the locality mentioned because the act was intrinsically dangerous, the facts alleged, if proved, would establish such negligence. The only negligence alleged is the sending up of the defective bomb and failure to notify the intestate of her danger.

After the demurrer had been decided in favor of the city, the plaintiff moved to amend his complaint so that it should appear that the celebration, discharge of fireworks and explosion of bombs, were for the corporate advantage of the city, and the motion was denied. The original complaint shows that the celebration was public, that, as before stated, the display was from the public green adjacent to two public streets. It thus appeared that the spectacle was open to the entire public with no opportunity for the city to receive any pecuniary benefit in the way of admission fees or otherwise from the celebration. Any corporate advantage to the city from the celebration could only consist in the pleasure and patriotic enthusiasm excited in the persons who attended it. This only can have been in

the mind of the pleader when he moved for the amendment. Needless to say that such a benefit is not a pecuniary benefit and would not deprive the city's act in carrying out the celebration of its character as the performance of a governmental function. The proposed amendment added nothing not covered by the original allegations, and was properly denied.

The court properly held that the alleged acts of negligence were committed while the city was engaged in the performance of a governmental duty, and that it was not liable for the negligence of its servants or agents while engaged therein.

There is no error.

In this opinion PRENTICE, C. J., and BEACH, J., concurred.

WHEELER, J. (dissenting). The complaint alleges: that New Haven under authority of its charter made an appropriation for the celebration of Independence Day, on July 5th, 1915, and by way of such celebration had a display of fireworks upon the New Haven green, which consisted or included the sending up by its agents of certain bombs which were intended to explode in the air. Among them was an eight-inch bomb which, whether with a perfect fuse or not, was "intrinsically dangerous." The display was in a central and populous part of New Haven, in close and dangerous proximity to certain of the principal streets of New Haven upon which were large crowds of people, in ignorance of danger, witnessing the display upon invitation of the city. It is alleged that said display "rendered the said public streets and thoroughfares unsafe and dangerous for the public thereon, and especially dangerous for the explosion of eight-inch bombs in such close proximity thereto." Said eight-inch bomb contained a

fuse which was defective or damp, which fact was or ought to have been known to the city, and the city was negligent in using such a bomb. Through the negligence of the city said bomb struck the ground in an open space adjoining the highway and there exploded, and did great havoc and killed the plaintiff's intestate who, in the exercise of due care, was viewing the celebration.

The complaint sets up a case of negligence, and in my opinion one of wantonness and nuisance. Under our system of pleading the story of the occurrence is told and whatever cause of action arises out of the story is part of the case. I think that the complaint fairly states that the display of fireworks in such a locality was intrinsically dangerous to the spectators who had been invited to the display, and that the discharge of a bomb intrinsically dangerous in itself, in such a locality, in the midst of such a concourse of people, constituted such discharge, as matter of law, a wanton act and a nuisance. It is too narrow a reading of the complaint to hold that it does not allege that the discharge of an intrinsically dangerous bomb in that locality, and in the midst of such a concourse of people, was itself intrinsically dangerous.

The city demurred because (1) it appeared that the fireworks were discharged in the course of a public celebration of Independence Day, and it was not alleged that the celebration was for the corporate or pecuniary benefit of the city; (2) it appeared that the injuries alleged occurred while New Haven was engaged in a public governmental function under authority conferred by a public Act; and (3) it did not appear that any liability was imposed by law for any act alleged.

When a city is engaged in the performance of a governmental duty, no liability attaches to it for injury

resulting from the discharge of such duty through failure to use due care. The rule of municipal exemption does not apply to injury caused by the municipality in the discharge of a public duty for its corporate benefit. Such a duty is not a governmental duty, for it is not performed for the benefit solely of the public. Whether the municipality is discharging a governmental duty or not, is to be determined upon consideration of the nature of the duty imposed or the privilege conferred, and of the character of the act done. I assume, for the present purposes, that New Haven in conducting a celebration of Independence Day might be engaged in the performance of a governmental duty. It might conduct such a celebration for its own corporate benefit, and this might be established by proof of an admission charge or by the terms of the vote of appropriation or by other corporate act. If this were established it would not be exempt from liability for its negligence in conducting the celebration.

The complaint did not allege that the city was engaged in an enterprise for its own corporate or pecuniary benefit. This was one of the grounds of demurrer. The plaintiff seasonably moved to amend by adding: "Such celebration, discharge of fireworks and explosion of bombs, were for the corporate advantage of the defendant and for the benefit of its residents and citizens." The motion was denied. This I think was error, for the court could not say as matter of law that such a celebration might not have been undertaken for the corporate benefit of New Haven.

Moreover, the rule of municipal exemption for an act done by the municipality or its servants or agents when acting in the discharge of a public duty, does not relieve the municipality from liability for the consequences of the particular acts which the municipality has directed to be performed, and which, from their character or the

manner in which they are so ordered to be executed, will naturally work a direct injury to the property of others, or create a nuisance, or occasion a wanton injury to the property or rights of other persons. *Colwell* v. *Waterbury*, 74 Conn. 568, 573, 51 Atl. 530. A wanton injury to the person of another, or a nuisance committed against his person, creates a liability in the municipality no less than when the wanton injury or nuisance is committed against his property. Governmental immunity does not exempt from liability for a personal injury resulting from a wanton act or a nuisance. *Colwell* v. *Waterbury*, 74 Conn. 568, 573, 51 Atl. 530; *Mootry* v. *Danbury*, 45 Conn. 550, 556; *Feudl* v. *New Britain*, 88 Conn. 125, 128, 90 Atl. 35; *Morgan* v. *Danbury*, 67 Conn. 484, 493, 35 Atl. 499; *Judd* v. *Hartford*, 72 Conn. 350, 354, 44 Atl. 510; *Salzman* v. *New Haven*, 81 Conn. 389, 71 Atl. 500; 4 Dillon on Municipal Corporations (5th Ed.) § 1703; *Willett* v. *Village of St. Albans*, 69 Vt. 330, 38 Atl. 72.

Whether a situation, a thing, or an act, constitutes a nuisance, is ordinarily a question of fact. *Burnham* v. *Hotchkiss*, 14 Conn. 311, 318; *Stowe* v. *Miles*, 39 Conn. 426, 428. But when the facts are clear, the act in question may be held to be a nuisance as a matter of law. *Jenne* v. *Sutton*, 43 N. J. L. 257. In *Speir* v. *Brooklyn*, 139 N. Y. 6, 11, 34 N. E. 727, the court said: "The discharge of fireworks in a city under any circumstances is attended with danger. . . . Under the circumstances, in view of the place, the danger involved and the occasion, the transaction was an unreasonable, unwarranted and unlawful use of the streets, exposing persons and property to injury, and was properly found to constitute a public nuisance."

In *Landau* v. *New York*, 180 N. Y. 48, 55, 72 N. E. 631, the court said: "There is a distinction, well recognized by law, between the discharge of fireworks upon

private property and in a public highway. There is also a distinction in this regard between highways, depending on their location, the extent of the traffic upon them and the danger involved in case of accident. Fireworks in certain streets may or may not be a nuisance, according to the circumstances, which usually present a question of fact. . . . Fireworks exhibited on an extensive scale in a great thoroughfare, in the midst of a large city, when a vast multitude of people is assembled, if not a nuisance as matter of law, may properly be found such as matter of fact."

In *Herman* v. *City of Buffalo*, 214 N. Y. 316, 319, 320, 108 N. E. 451, the question at issue was whether the defendant in the erecting of a municipal building had created or participated in the creation of a nuisance. To constitute the structure a nuisance, the court say: "The structure must have been inherently and imminently dangerous and a menace to the safety of the intestate. . . . The appellant must have created or participated in the creation of the dangerous and menacing condition. . . . The creation or participation in the creation of the dangerous condition must have been with the consciousness and understanding on the part of the appellant that it was creating it; or it must have been obvious and almost certain to a reasonably prudent man, while the acts were being performed on the part of the appellant, that those acts would create or help to create it. The condition must have been a purpose or object of the appellant; it must have intended to effect it; or its acts have been so reckless and unwarranted that that intention must be conclusively implied. . . . The wrongfulness must have been in the acts themselves rather than in the failure to use the requisite degree of care in doing them, and therein lies the distinction, under the facts of this case, between nuisance and negligence." Joyce on Nuisances, §§ 19,

384, 448; Wood on Nuisances, §§ 743, 744; *Cardwell* v. *Austin*, 168 S. W. Rep. (Tex. Civ. App. 1914) 385, 387; *Smith* v. *Jefferson*, 161 Iowa, 245, 142 N. W. 220; *City of New Castle* v. *Harvey*, 54 Ind. App. 243, 102 N. E. 878, 880; *Moser* v. *Burlington*, 162 N. Car. 141, 78 S. E. 74; *Radford* v. *Clark*, 113 Va. 199, 73 S. E. 571; *Hines* v. *Rocky Mount*, 162 N. Car. 409, 412, 78 S. E. 510. A satisfactory test for determining whether an act or acts constitute a nuisance, is that stated by the court in *Melker* v. *New York*, 190 N. Y. 481, 488, 83 N. E. 565: "Without attempting a general definition we are of the opinion that as applied to the facts of the case before us, if the natural tendency of the act complained of is to create danger and inflict injury upon person or property, it may properly be found a nuisance as matter of fact; but if the act in its inherent nature is so hazardous as to make the danger extreme and serious injury so probable as to be almost a certainty, it should be held a nuisance as matter of law. . . . Locality, surroundings, methods, the degree of danger, the custom of the country are the important factors."

The display of fireworks in such a locality, intrinsically dangerous to the spectators whom New Haven had invited to witness the display, and the discharge of a bomb itself intrinsically dangerous, constituted, as matter of law, the display a nuisance. New Haven caused and created the nuisance and her act caused this injury. Her liability must follow.

But if these facts are not held to constitute a nuisance, they must be held to present an issue of fact as to whether they constitute a nuisance, and, if só, the demurrer should have been overruled and the trier been permitted to pass on this issue of fact and determine whether the acts done under the circumstances present created a nuisance. After the demurrer was sustained the plaintiff sought to amend by adding to his com-

plaint: "The action of the city hereinbefore set out, . . . made said streets, thoroughfares and other portions of said city near said public square, unsafe and dangerous to the people lawfully thereon, and wrongly exposed these persons to injury, and the same at all of said times was a nuisance." The opinion of the majority finds the allegations of the complaint insufficient to sustain a cause of action for wantonness or nuisance. It would seem to follow such a holding that the denial of the amendment was error.

The record shows that the trial court decided the demurrer upon the authority of *Tindley* v. *City of Salem*, 137 Mass. 171, and apparently did not then consider the question of wantonness or nuisance. This question of nuisance arose later in *Kerr* v. *Brookline*, 208 Mass. 190, 94 N. E. 257, and the conclusion of the court upon this question seems at variance with *Colwell* v. *Waterbury*, 74 Conn. 568, 51 Atl. 530, and other authorities upon this subject in our State.

In my opinion the demurrer should have been overruled and the amendment allowed.

In this opinion RORABACK, J., concurred.