# City of Virginia Beach

## v.

# Samuel Archer Green, et al.

Record No. 821456

September 6, 1985

Present: All the Justices

*Mark E. Slaughter, Assistant City Attorney (J. Dale Bimson, City Attorney, on brief), for appellant.*
*Janet B. Brydges (W. Edward Hudgins, Jr.; Richard G. Brydges, on brief), for appellees.*

COMPTON, J., delivered the opinion of the Court.

In this equity proceeding, we review action of the trial court which enjoined a municipality from directing removal of an encroachment constructed by a private landowner on a public way.

In July of 1979, complaints were made to the City of Virginia Beach that man-made obstructions were encroaching on the public, oceanfront beach area of the Atlantic Ocean. Designated on plats as Ocean Avenue, the public way is approximately 150 feet wide.

As a result of the complaints, the City Council ordered its Director of Public Works to conduct a physical survey of the northern part of the beach from 42nd Street to 89th Street. This investigation revealed 212 unauthorized encroachments in Ocean Avenue. The encroachments included retaining walls, landscaped yards (developed by placing topsoil on the sand), wooden decks, sheds, walkways, catamaran anchors, swing sets, and a swimming pool. Upon completion of the survey, the walls, the yards, and structures attached to dwellings were designated for identification purposes as "permanent" encroachments. Other structures, including freestanding objects, were designated as "detached" encroachments. Of the 212 encroachments, 148 were classified as "permanent."

At the time of the investigation, the City had an established policy to stabilize and maintain the integrity of the sand-dune system along this area of the beach. According to expert opinion, loose and "unconsolidated" sand is subject to erosion by the wind while dune integrity is enhanced by the development of beach grass.

The City officials decided not to order removal of the "permanent" encroachments. The City's experts believed such objects had

stabilized the beach and dune area because the dune system had "healed" around these encroachments, and beach grass had become reestablished at those sites. The City concluded that the dune system would have suffered more by removal of those encroachments than if they remained in place.

The City decided to require removal of the "detached" encroachments because they were detrimental to the dune system and restricted the City's effort to revitalize the dune area along the oceanfront. If the owner of any such encroachment did not wish to follow the City's direction to remove the object, the owner could apply to City Council for "an authorized encroachment." Many of the 64 "detached" encroachments were small items, such as posts and swing sets, and were removed by City personnel. Eventually, about 30 of the "detached" encroachments remained. Of that group, 14 owners applied to City Council for "encroachment approval" and three such applications were approved. Two gazebo-type sheds and the swimming pool were authorized to remain, provided they were maintained and open for public use and that no additions or enlargements were made to the structures in the future.

Appellees Samuel Archer Green and Amelia B. Green own a residence at 6408 Oceanfront. Their property abuts Ocean Avenue. During the course of renovating the home in 1973-74, the Greens had a private, recreational, wooden deck or patio constructed approximately 40 feet into the public way. The deck is 20 feet in diameter, is made of heavy lumber supported by posts with concrete footings set in the sand, and is linked to the residence by a wooden walkway. Electric power and water service is connected to the platform. No building permit was obtained from the City at the time of construction and, prior to 1979, the City had not otherwise authorized the encroachment.

In the 1979 investigation, the City classified the Greens' deck as a "detached" encroachment for two reasons. First, the structure extended "quite some distance" from the dwelling into the public way. Second, the deck was situated on the crest of a dune, a fact disputed by the Greens, and was having "a deteriorating effect on the dune system." For these reasons, the City Council denied the Greens' request for encroachment approval and ordered the deck removed.

The Greens filed this suit in November of 1980, asking for temporary and permanent injunctive relief prohibiting the City from

removing the structure. Following an April 1982 ore tenus hearing, the trial judge ruled from the bench in favor of the Greens.

The chancellor stated that, while the City had the power either to grant or deny encroachments upon its public ways, it must adopt definite standards in acting upon applications for approval of encroachments to be applied equally to all the objects in question. The chancellor reasoned that, if such standards had been adopted, virtually all the encroachments discovered by the City would have to be disapproved. Therefore, the court concluded, the actions of the City Council were "in a constitutional sense arbitrary and capricious and cannot be permitted to stand."

The chancellor decided not to issue a permanent injunction. Instead, the court below, in the May 1982 order appealed from, enjoined "the City from any action to cause the removal of these particular encroachments until such time as the City has adopted standards applying equally to all persons encroaching upon the public way, and thereafter granting to [the Greens] a hearing in accordance with the standards so established." This was error.

Under these circumstances, the City has absolute discretion to require removal of the structure in question. The constitutional, equal protection analysis employed by the trial court has no application to this situation.

■ There is no dispute that the structure extends 40 feet into the public right of way, a paper street. Likewise, it is undisputed that the deck was built without permission of the City. Therefore, the act of building and maintaining this platform and walkway on public property for private purposes constitutes an unlawful encroachment on the public way.

■ The General Assembly has made such conduct a crime. When this controversy arose, Code § 15.1-316 provided as follows, before a 1983 amendment not pertinent here: "Any person . . . that shall undertake to occupy or use any of the streets, avenues, parks, bridges or any other public places or public property or any public easement of any description in any city or town, in a manner not permitted to the general public, without having first legally obtained the consent thereto of the city council . . . shall be guilty of a misdemeanor. . . . Such occupancy shall be deemed a nuisance. . . ." Manifestly, the Greens are in violation of this statute and the structure qualifies as a public nuisance. *City of Richmond* v. *Smith,* 101 Va. 161, 166-67, 43 S.E. 345, 346-47 (1903).

■ Moreover, the General Assembly has given municipalities the power and duty to prevent and control the existence of such obstructions. For example, Code § 15.1-893 empowers a municipal corporation to act to prevent "any unlawful obstruction of or encroachment over, under or in any street . . . or other public way or place." The same statute also authorizes a municipality to provide penalties for maintaining any such unlawful obstruction; to remove the encroachment and to collect the cost of removal from the owner; to require the owner so obstructing to remove the structure; to impose penalties if the encroachment is not removed within the time ordered; to permit encroachments on public ways "subject to such terms and conditions as the municipal corporation may prescribe"; and, to prosecute suits to recover possession of any of its public ways unlawfully occupied. Also, Code § 15.1-377 empowers municipalities to adopt ordinances authorizing owners of structures encroaching upon any public streets to maintain such encroachments as they exist, "within such limitations as [the municipality] may prescribe," until such structures are destroyed or removed.

■ Therefore, because the encroachment is unlawful and susceptible of being prohibited entirely by the municipality, the Greens possess no inherent, constitutional protection against a municipal order for removal of the structure. This is not the case of a private person engaged in a lawful activity in a lawful way upon his own premises, conduct which ordinarily would entitle the individual to equal protection of the laws against the unrestrained discretion of government officials. Rather, this is the case of unlawful use of public property for private purposes, conduct which may be prohibited at the absolute discretion of the municipality. *See Taylor* v. *Smith,* 140 Va. 217, 232-39, 124 S.E. 259, 263 (1924).

For these reasons, the order appealed from will be reversed and the bill for injunctive relief will be dismissed.

*Reversed and dismissed.*