SAMUEL MELKER, an Infant, by ASCHER MELKER, His Guardian ad Litem, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

1. NUISANCE — FACTS CONSTITUTING A NUISANCE. Whether any particular act is a nuisance, or not, depends upon the facts pertaining thereto. If the natural tendency of the act complained of is to create danger and inflict injury upon person or property, it may properly be found a nuisance as a matter of fact; but if the act in its inherent nature is so hazardous as to make the danger extreme and serious injury so probable as to be almost a certainty, it should be held a nuisance as a matter of law. A nuisance at law is a fact, but it is a fact so conclusive in legal effect as to be treated as a matter of law. Locality, surroundings, methods, the degree of danger and the custom of the country are the important factors. The firing of a cannon loaded with grape shot, if in a city or village, would be a nuisance as matter of law; if in a remote place far from the habitations of man, it might be a nuisance as a matter of fact, and if against the face of a precipice, no nuisance at all.

2. SAME — WHEN DEGREE OF DANGER DETERMINES WHETHER AN ACT IS A NUISANCE OR NOT. Unless *malum in se* a nuisance is a matter of degree; not the degree of care used, for that presents a question of neg-

31

ligence, but the degree of danger existing even with the best of care. Degree implies gradation, and gradation depends on circumstances. When the degree of danger is obvious and so extreme as to invite calamity, a nuisance *per se* exists, but when the danger is so secret in nature that the cause of an accident cannot be discovered and according to all experience is neither imminent nor extreme, it is not a nuisance *per se*, although the jury may find it a nuisance in fact.

3. FIREWORKS — EXHIBITION THEREOF, ON PUBLIC OCCASIONS, NOT MALUM IN SE. While the custom of displaying and discharging firework 3 upon public occasions may not be wise, it is a common and frequent method of celebrating public holidays and important public events, which is sanctioned by long usage and the practice of every community. An exhibition of fireworks is not, therefore, *malum in se*, but is evil or not according to circumstances.

4. SAME — EXHIBITION OF FIREWORKS IN CITY OF NEW YORK UPON CELEBRATION OF ELECTION — UNEXPLAINED EXPLOSION — EVIDENCE — WHEN FACTS DO NOT ESTABLISH NUISANCE AS MATTER OF LAW — VERDICT THAT EXHIBITION WAS NOT A NUISANCE AS A MATTER OF FACT. Where, upon a celebration held on the evening of an election day, there was given an extensive exhibition of fireworks, consisting of bombs fired from mortars, rockets and the like, upon a wide public street, in the city of New York, bounded on one side by a large public square, or park, where a large number of people were assembled to see the election returns and witness a parade, and during the exhibition there was an explosion of fireworks which injured a number of spectators, and it appeared upon the trial of an action, brought against the city by one of the persons injured, that the exhibition was under the control of experts of established skill and experience; that the fireworks were all furnished by a manufacturer of high repute who had given such exhibitions for many years without an accident of moment; that the accident was caused by the explosion of a mortar used for the purpose of firing bombs; that all of the mortars used were carefully tested before the exhibition and were found in sound condition; that such mortars were made of steel tubing and were of a kind that had been frequently used before without serious results, and that the explosion was owing to some cause so secret and unprecedented that it could not be explained, it cannot be held that such exhibition was a nuisance as a matter of law. The trial court was justified, therefore, in submitting the facts to the jury to determine whether or not such exhibition of fireworks constituted a nuisance, and the judgment entered upon a verdict for the defendant should be affirmed.

*Molker* v. *City of New York,* 117 App. Div. 923, affirmed.

(Argued January 8, 1908; decided January 21, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered

March 6, 1907, affirming a judgment in favor of defendant entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William M. K. Olcott* and *T. B. Chancellor* for appellant. The explosion of fireworks described by the evidence constituted a nuisance as matter of law, and it was error for the trial court to refuse so to charge, and to leave the question to the jury. (Elliott on Roads & Streets, § 645; *People* v. *Vanderbilt*, 28 N. Y. 396; *Wakeman* v. *Wilbur*, 147 N. Y. 657; *People* v. *Maher*, 141 N. Y. 330; *Dubois* v. *Kingston*, 102 N. Y. 219.)

*Francis K. Pendleton, Corporation Counsel (Theodore Connoly* and *Terence Farley* of counsel), for respondent. The question in controversy, whether the explosion was a nuisance, was one of fact for the determination of the jury, and it would have been error to take it from its consideration. (Code Civ. Pro. § 968; *McDonald* v. *M. S. Ry. Co.*, 167 N. Y. 66; *Mitchell* v. *T. A. R. R. Co.*, 62 App. Div. 371; *Philips* v. *Philips*, 77 App. Div. 113; *Ivison* v. *Ivison*, 80 App. Div. 599; *Rosenheimer* v. *S. G. L. Co.*, 36 App. Div. 1; *R. L. Co.* v. *S. S. C. Co.*, 62 App. Div. 421; *Thomas* v. *Brackney*, 17 Barb. 654; *Rogers* v. *Barker*, 31 Barb. 447; *Lounsbury* v. *Foss*, 80 Hun, 296; 145 N. Y. 600; *Williams* v. *Hynes*, 23 J. & S. 86.)

VANN, J.   This action was brought to recover damages for personal injuries alleged to have been sustained by the plaintiff through the fault of the defendant. The complaint contains two counts, one alleging negligence, which was not relied upon at the trial, and the other a nuisance, as the ground of recovery. The action involves the liability of the defendant for an explosion of fireworks on Madison avenue, adjoining Madison square, on the evening of election day, in November, 1902, after the board of aldermen had adopted a resolution suspend-

ing the ordinances relating to the discharge of fireworks, "so far as they may apply to the meetings and parades of political parties or associations during the campaign of 1902." The case is a companion to one recently decided by us relating to the same accident. (*Landau* v. *City of New York*, 180 N. Y. 48.) Upon the trial of that action it was not disputed that "the National Association of Democratic Clubs, a political organization, had a parade on the evening of November 4th, 1902, and its officers arranged to have a display of fireworks on Madison avenue between Twenty-third and Twenty-fifth streets in connection therewith." Upon the trial of this action the allegation as to a parade by a political organization was disputed and evidence was given by both parties upon the proposition so that it became a question of fact for the jury. In other respects the leading facts were the same in both cases.

Madison avenue, at the point in question, "is a wide street, bounded on the west by Madison Square, a park of seven acres, where, as well as in the adjoining streets, 75,000 people assembled to receive the election returns and witness the parade. They stood closely crowded in the park and on both sides of Madison avenue. The fireworks, consisting of mortars, bombs, rockets and the like, were arranged in six parallel rows in the middle and on the west side of the avenue, commencing about twelve feet from the curb. * * * They filled the middle of Madison avenue from Twenty-fourth to Twenty-fifth streets. The bombs were fired from mortars made of steel tubing and were of a kind that had been frequently used before without serious results." Between nine and ten o'clock in the evening some of the fireworks exploded from a cause not disclosed by the evidence and the plaintiff was injured.

The case was submitted to the jury under the instruction that in order to render a verdict for the plaintiff they "must find that there was a meeting or a parade of a political party, or a political association, and that the fireworks were discharged in connection with this parade or meeting," to which no excep-

tion was taken.    The trial court further charged the jury that
they should " determine whether or not the fireworks that
were then exposed in the city of New York constituted a nui-
sance," and that if they were a nuisance the defendant was
liable, to which an exception was taken.

The plaintiff requested the court to charge that " fireworks
placed upon the surface of a great thoroughfare, in the midst
of a large city, where a vast multitude of people is assembled,
and exhibited and discharged there on an extensive scale, as
was done in this instance, constitutes a nuisance as matter of
law."    The court refused to so charge and the plaintiff
excepted.

The plaintiff testified that he went to the place in question
for the purpose of seeing " the election returns, the balloon
and the fireworks," but no instruction was given or requested
as to the effect of his presence as a voluntary spectator of the
display.

The jury found a verdict for the defendant, and the Appel-
late Division, after unanimously affirming the judgment
entered accordingly, permitted an appeal to this court, and
certified that in its opinion " a question of law is involved
which ought to be reviewed by the Court of Appeals."

The rule of unanimous affirmance requires us to assume,
for the purpose of this appeal, that the exhibition of fireworks
in question was not held in connection with a meeting or
parade of a political party or association, and that there was
no nuisance as matter of fact.    The only question requiring
the expression of consideration is whether upon the conceded
facts a nuisance existed as matter of law.    Twice, quite
recently, we have considered the question whether a display
of fireworks in a public street in the midst of a large city is a
nuisance.    (*Speir* v. *City of Brooklyn*, 139 N. Y. 6 ; *Lan-
dau* v. *City of New York*, 180 N. Y. 48.)

In the earlier case the exhibition was held at the junction
of two narrow streets in a compact part of the city of Brook-
lyn, and the damage was caused by fire resulting from the dis-
charge of a rocket directly through a window of the plaintiff's

house.    Chief Judge ANDREWS, speaking for the court, said :
" The finding of the trial judge that the use of the street for
the discharge of fireworks constituted a public nuisance is
amply justified in view of the circumstances.    It has been
decided in some cases that the discharge of fireworks in the
streets of a city or village is a nuisance *per se* and subjects
persons engaged in the transaction to responsibility for any
injury to person or property resulting therefrom.    (*Jenne* v.
*Sutton*, 43 N. J. L. 257 ; *Conklin* v. *Thompson*, 29 Barb. 218.)
It may be doubted whether the doctrine in its full breadth
can be maintained.    The practice of making the display of
fireworks a part of the entertainment furnished by munici-
palities on occasions of the celebration of holidays or the com-
memoration of important public events is almost universal in
cities and villages, and we are not prepared to say that this
may not be done, and that streets and public places may not
be used for this purpose under the supervision of municipal
authorities, due care being used both as to the place selected
and in the management of the display, without subjecting the
municipality to the charge of sanctioning a nuisance and the
responsibility of wrongdoers."    The final conclusion announced
was that the circumstances were such as to authorize the trial
court to hold the city liable for an " unreasonable, unwarranted
and unlawful use of the streets," and that such use " was
properly found to constitute a nuisance."    The emphasis of
the opinion rests on the location at the junction of two narrow
streets and the imminent danger of fire owing to the con-
tracted space and the inflammable nature of the materials
used.    (*Speir* v. *City of Brooklyn*, 139 N. Y. 6, 11.)

The later case involved the display of fireworks now under
consideration, where the space was ample, the danger from
fire comparatively light, the management in charge of experts
of high standing, the accident of unknown origin and of a
kind not reasonably to be apprehended.    Upon the first trial
of that case the plaintiff had a verdict, which was reversed by
the Appellate Division.    (*Landau* v. *City of New York*, 90
App. Div. 50.)    Upon the second trial there was a nonsuit

and the Appellate Division affirmed, but we reversed and granted a new trial upon the ground, distinctly announced, that " a case was made for the jury." In discussing the subject we said : " There is a distinction, well recognized by law, between the discharge of fireworks upon private property and in a public highway. There is also a distinction in this regard between highways, depending on their location, the extent of the traffic upon them and the danger involved in case of accident. Fireworks in certain streets may or may not be a nuisance, according to the circumstances, which usually present a question of fact. In the case now before us we have to do with a crowded street, near the center of the largest city on the continent, ' where any misadventure in managing the discharge would be likely to result in injury to persons or property.' Fireworks exhibited on an extensive scale in a great thoroughfare, in the midst of a large city, where a vast multitude of people is assembled, if not a nuisance as matter of law, may properly be found such as matter of fact. This was so adjudged in the *Speir* case, which is controlling in principle." We held that " while a municipal corporation is not liable for the failure to pass ordinances prohibiting the discharge of fireworks in the public streets, it is bound to exercise due care to keep its streets in safe condition, and is liable for permitting dangerous obstructions or nuisances therein." (*Landau* v. *City of New York*, 180 N. Y. 48.)

We intimated that the exhibition might be a nuisance as matter of law, but all we decided was that the nonsuit was improper and that the case should have been sent to the jury. A similar intimation was given in another case, but the actual decision was that there was a question of fact as to the alleged negligence of the defendant. (*Crowley* v. *Rochester Fireworks Co.*, 183 N. Y. 353.)

It now becomes our duty to decide whether the exhibition, which resulted in a frightful disaster, was a nuisance as matter of law.

For time out of mind the term "nuisance" has been regarded as incapable of definition so as to fit all cases, because

the controlling facts are seldom alike, and each case stands on
its own footing.  We are not aided by the classification into
public and private nuisances, because the difference between
them does not depend on the nature of the thing done, but
on the fact that one affects the public at large and the other a
limited number only.  The primary meaning of the word,
suggested by its derivation, is that which injures, or, in the
quaint phrase of ancient times, " that which worketh hurt."
The injury may be to person or property, to health, comfort,
safety or morality.  It may be a crime.  (Penal Code, § 385.)
Courts of high standing have held that a nuisance at law, or a
nuisance *per se*, exists only when the act done is a nuisance at
all times and under any circumstances, regardless of location
or surroundings.  (*Hundley* v. *Harrison*, 123 Ala. 292;
*Whitmore* v. *Orono Pulp & Paper Co.*, 91 Me. 297; *Wind-
fall Mfg. Co.* v. *Patterson*, 148 Ind. 414.)  Other courts
make fitness of locality the standard and give controlling
effect to surrounding circumstances, holding certain acts not
permissible as matter of law under some circumstances, but
permissible under others and under others still not permissible
if the jury find them nuisances as matter of fact.  The weight
of authority in this state and elsewhere is in accordance with
the latter view, except when the act is *malum in se*, when
the surrounding circumstances have no bearing upon the
question.

We think that each case must depend on its own facts for
classification as a nuisance at law, or in fact, or neither.
Without attempting a general definition we are of the opin-
ion that as applied to the facts of the case before us, if the
natural tendency of the act complained of is to create danger
and inflict injury upon person or property, it may properly
be found a nuisance as matter of fact; but if the act in its
inherent nature is so hazardous as to make the danger extreme
and serious injury so probable as to be almost a certainty, it
should be held a nuisance as matter of law.  While this defi-
nition lies on the border of the domain of fact, any definition
of a nuisance at law must necessarily lie there, for it is a fact,

but so conclusive in legal effect as to be treated as a matter of
law.  Locality, surroundings, methods, the degree of danger,
and the custom of the country are the important factors.
The firing of a cannon loaded with grape shot, if in a city or
village, would be a nuisance as matter of law ; if in a remote
place far from the habitations of man, it might be a nuisance
as matter of fact, and if against the face of a precipice, no
nuisance at all.

What were the surroundings and the degree of danger
reasonably to be apprehended from the exhibition in ques-
tion, when considered, not in the light of what actually took
place, but in the light of what was likely to take place ?  It
was not at the junction of two narrow streets, as in the *Speir*
case, but in a wide street bordering on a park seven acres
in extent, with reasonable space for safe and effective man-
agement.  The display was under the control of experts of
established skill and experience.  The fireworks were all
made by a leading manufacturer of high repute.  For more
than thirty years he had given similar displays, with similar
pieces, all over the world, without an accident of moment.
Repeatedly, in Madison square, in Union square and in
City Hall Park, during the Spanish war, on election nights,
at the opening of great public works and on other occa-
sions, he had given such exhibitions with no bad results.  He
had never known a mortar to explode before and it was the
explosion of a mortar used for the purpose of firing bombs
that caused the accident.  All the mortars had been carefully
tested on the day of the exhibition and each responded to the
tap of the hammer with that clear ring which indicates a
sound condition.  The explosion was owing to some cause
so secret and unprecedented that it could not be explained.
Army officers of great experience in testing explosives
made many experiments with similar mortars soon after
the accident, at the request of the district attorney, but
they could not state the cause of the explosion and they
regarded the mortars as safe.  The expert called by the
plaintiff, an ex-army officer who had made many tests in

behalf of the government, likened the occurrence to the firing of a gun hundreds of times without danger, when at last "you suddenly have a burst that cannot be explained." He looked for the unexpected and favored precautions to meet what possibly might happen. He thought that "as an extra precaution" space should have been "roped off for one hundred feet" and that the mortars should have been sunk below the surface of the ground so that a possible explosion would do no damage. The other experts were of a different opinion, and some thought that burying in the ground would increase the danger.

The occasion was one of public rejoicing by many people. For generations such exhibitions have been common throughout the country. Our great national holiday never passes without them in many places all over the land. National victories, the victories of political parties and the success of organizations comprising a multitude of persons, for time out of mind have been celebrated by such displays. It is a common method by which large bodies of people express their satisfaction and joy over some event they deem important. Fireworks are widely used to express patriotism, triumph and gladness, to celebrate public events, to entertain crowds of people and for various purposes, too numerous to mention. Such uses are no innovation but are in accordance with an old and well-settled custom of the country, sanctioned by the practice of every community. The custom may not be wise, but it is almost universal and indicates the average judgment of our citizens upon the subject.

An exhibition of fireworks is not *malum in se*, but is evil or innocent according to circumstances. Unless *malum in se*, like a disorderly house, for instance, a nuisance is a matter of degree. Thus we have held that the storage of gunpowder is not a nuisance *per se* and that it "depends upon the locality, the quantity and the surrounding circumstances," which are for the consideration of the jury. (*Heeg* v. *Licht*, 80 N. Y. 579.) A nuisance does not rest upon the degree of care used, for that presents a question of negligence, but on

the degree of danger existing even with the best of care. Degree implies gradation, and gradation depends on circumstances.    When the degree of danger is obvious and so extreme as to invite calamity, a nuisance *per se* exists, but when the danger is so secret in nature that the cause of an accident cannot be discovered and according to all experience is neither imminent nor extreme, it is not a nuisance *per se*, although the jury may find it a nuisance in fact. When disinterested army officers, expert from years of official experiments, testify that the degree of danger was so slight that they regarded the mortars as safe and the only difference of opinion related to the method of using them, it would be hazardous to hold the danger so inherent and the degree of danger so extreme as to make the act a nuisance of itself, independent of the attending circumstances.    If the circumstances are to be considered, they must be weighed in order to get at the degree of danger and the weight of evidence is for the judges of fact.    The circumstances of this case do not call for the hard and fast rule of a nuisance as matter of law, but for the judgment of a jury whether the occurrence was a nuisance as matter of fact.    The terrible but unprecedented result may suggest regulation or restraint by the legislature, but it is safer for the courts, following the weight of authority throughout the country, to leave such questions to a jury, even at the risk of inconsistent verdicts, rather than to lay down a rigid and inflexible rule, less calculated to do justice in a majority of cases.

The judgment appealed from should be affirmed, with costs.

CULLEN, Ch. J., GRAY, WERNER, HISCOCK and CHASE, JJ., concur; EDWARD T. BARTLETT, J., absent.

Judgment affirmed.