LOUISE M. HERMAN, as Administratrix of the Estate of FRED W. HERMAN, Deceased, Respondent, *v.* CITY OF BUFFALO, Appellant, Impleaded with Others.

Nuisance — negligence — distinction between nuisance and negligence and liability for injury to persons thereunder — action for death of plaintiff's intestate caused by collapse and fall of building being erected by municipality — when municipality not liable therefor.

1. A distinction between nuisance and negligence is applicable in an action to recover for the death of a person caused by the act of another, as in this case. The one is a violation of an absolute duty; the other, a failure to use the degree of care required in the particular circumstances — a violation of a relative duty. A nuisance may be created or maintained with the highest degree of care, and the negligence of a defendant, unless in exceptional circumstances, is not material. To constitute a nuisance the wrongfulness must have been in the acts themselves rather than in the failure to use the requisite degree of care in doing them.

2. Where the charge of maintaining a dangerous nuisance is based upon the fall of an improperly constructed building, it must appear, in order to render the owner thereof liable, as such, (1) that he intended it should be constructed in the manner that proved to be improper; (2) that he knew or ought to have known that such manner of construction was improper, and (3) that such improper construction caused the injury complained of.

3. The record in this action, brought to recover against a city for nuisance in construction of a building, examined, and *held*, that the trial court erred in denying defendant's motion for a nonsuit; that while the evidence permitted the jury to find that the structure was inherently and imminently dangerous and that the acts of the municipality aided, at least, in creating that condition, yet the evidence did not tend to prove that the creation of the dangerous condition was a purpose or object of the municipality, or within its intention, either actually or through implication. There is no proof that the acts of the municipality were with the consciousness or intention that they would cause the deflection of the wall of the structure which collapsed, or create the dangerous condition or that they obviously would create it.

*Herman* v. *City of Buffalo*, 157 App. Div. 819, reversed.

(Argued November 25, 1914; decided February 25, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 10, 1913, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William S. Rann, Corporation Counsel* (*George E. Pierce* of counsel), for appellant. The building was not a nuisance on the 30th day of June, 1911, or at any time prior thereto, and the court erred in refusing to grant a nonsuit and to dismiss the plaintiff's complaint. (*Kleinberg* v. *Schwan*, 134 App. Div. 493; 198 N. Y. 619; *Murphy* v. *City of Brooklyn*, 98 N. Y. 642; *Sterger* v. *Van Sicklen*, 132 N. Y. 499; *Vil. of Haverstraw* v. *Eckerson*, 124 App. Div. 18; *Adlin* v. *E. B. Co.*, 129 App. Div. 713; *Beauchamp* v. *E. B. Co.*, 143 App. Div. 48; *De Moll* v. *New York*, 163 App. Div. 676; *McCluskey* v. *Wile*, 144 App. Div. 470; *Kilts* v. *Kent Co.*, 162 Mich. 646; *C. C. T. Co.* v. *Kingston R. R. Co.*, 154 N. Y. 493; *Engel* v. *Eureka Club*, 137 N. Y. 100.) The complaint is formed in nuisance. The plaintiff elected to proceed upon the theory of nuisance. The case was tried and submitted to the jury upon that theory. The evidence will not support that theory and the judgment cannot be upheld upon any other theory. (*Opper* v. *Davega*, 116 App. Div. 268; *People* v. *Ward*, 76 Misc. Rep. 323.)

*Charles L. Feldman* for respondent. The verdict of the jury on the theory of nuisance is justified by the evidence. (*Herman* v. *City of Buffalo*, 157 App. Div. 819; *McNulty* v. *Ludwig & Co.*, 153 App. Div. 208; *Pitcher* v. *Lennon*, 16 Misc. Rep. 609; 12 App. Div. 356; *Cochrane* v. *Sess*, 168 N. Y. 375; *Uggla* v. *Brokaw*, 117 App. Div. 686; *Stubley* v. *Allison Realty Co.*, 124 App. Div. 167; *Ahern* v. *Steele*, 115 N. Y. 203; *Haggerty* v. *God-*

*ley,* 20 Penn. St. 387; *Fox* v. *Buffalo Park,* 21 App. Div. 321; *Edwards* v. *N. Y. & H. R. R. Co.,* 98 N. Y. 245.)

COLLIN, J. Thus far, it has been adjudged that the appellant, city of Buffalo, created or participated in the creation of a nuisance which caused the death of the respondent's intestate, and is liable to her for the resulting damages.

The alleged nuisance was a partially erected engine house. The foundation walls, the steel columns thereon supporting the trusses for the roof, those trusses and a part of the roof were constructed or placed when it collapsed while the intestate was at work upon the roof. Two contractors with the appellant for the construction, one subcontractor and the architect and superintendent of the construction were defendants with the appellant. The verdict was in favor of the defendants other than the appellant. Inasmuch as the judgment of the Appellate Division affirming that of the Trial Term was not unanimous, we must ascertain by a scrutiny of the evidence whether or not there was any proof permitting the jury to return a verdict in favor of the plaintiff. (*Heskell* v. *Auburn L., H. & P. Co.,* 209 N. Y. 86.)

The appellant does not either in brief or argument assert that the city of Buffalo is immune, as a governmental agent, from legal responsibility and liability in case it, in the erection of the engine house, created or participated in the creation of a nuisance. It is not so immune. (*Oakes Manfg. Co.* v. *City of New York,* 206 N. Y. 221; *Landau* v. *City of New York,* 180 N. Y. 48; *Wilcox* v. *City of Rochester,* 190 N. Y. 137.) Under the facts disclosed by the record it was correctly held that the intestate was lawfully upon the building, and his death charged liability upon the defendant provided it was a nuisance and the appellant had participated in making it such. The creator of a nuisance upon his land

is liable to persons lawfully upon it whom the nuisance injures.

Before considering the evidence there should be an ascertainment of the facts essential to constitute the structure a nuisance as to the intestate. The appellant owned and possessed the land upon which it stood and had contracted for its erection. The intestate, a subcontractor, was at work upon it. We are to determine, therefore, the ·fundamental or elemental facts needful to constitute the structure a nuisance, through and because of the method or conditions of construction, between the owner and the intestate rightfully upon it.

The structure must have been inherently and imminently dangerous and a menace to the safety of the intestate. (*Cochran* v. *Sess*, 168· N. Y. 372; *Melker* v. *City of New York*, 190 N. Y. 481.)

The appellant must have created or participated in the creation of the dangerous and menacing condition. The building had not become ruinous and unsafe through prolonged existence or other analogous causes. The respondent does not claim that the architect or either of the contractors or subcontractors was incompetent or unfit. While the appellant is answerable for the acts of its servants and employees, it is not liable for the negligent or wrongful acts of the competent independent contractors or of the subcontractors or their servants. An owner is not liable to third persons for the injurious acts of a competent independent contractor or of a subcontractor, unless the acts are imposed by statute upon the owner and cannot be delegated so as to exempt him from liability or the contract in and of itself is unlawful or the thing contracted to be done is necessarily unlawful or wrongful, or the injury is a direct and natural result from the work required of the independent contractor either by the contract or the direction of the owner. (*Burke* v. *Ireland*, 166 N. Y. 305; *Engel* v. *Eureka Club*, 137 N. Y. 100; *Hexamer* v. *Webb*, 101 N. Y. 377; *King* v. *N. Y. C.*

*& H. R. R. R. Co.*, 66 N. Y. 181.)   An owner may also through ratification or adoption become responsible for the negligent or wrongful acts of the independent con-tractor.   (*Vogel* v. *Mayor, etc., of N. Y.*, 92 N. Y. 10.) The fact that the owner through an architect and super-intendent of construction or other agent exercises a general supervision of the work and construction does not affect the rule of exemption from liability, where that is only for the purpose of assurance that the contract is being performed.   (*Uppington* v. *City of New York*, 165 N. Y. 222.)

The creation or participation in the creation of the dan-gerous condition must have been with the consciousness and understanding on the part of the appellant that it was creating it; or it must have been obvious and almost certain to a reasonably prudent man, while the acts were being performed on the part of the appellant, that those acts would create or help to create it.   The condition must have been a purpose or object of the appellant; it must have intended to effect it; or its acts have been so reckless and unwarranted that that intention must be conclusively implied.   This is not declaring that it must have intended the danger or the catastrophe.   It must have intended the condition, but, having that inten-tion, may have thought it was not dangerous or been thoughtless in regard to it.   It must have violated the abso-lute duty of refraining from the participating acts, not merely the relative duty of exercising reasonable care, fore-sight and prudence in their performance.   The wrongful-ness must have been in the acts themselves rather than in the failure to use the requisite degree of care in doing them, and therein lies the distinction, under the facts of this case, between nuisance and negligence. · The one is a violation of an absolute duty, the other a failure to use the degree of care required in the particular circumstances — a vio-lation of a relative duty.   A nuisance may be created or maintained with the highest degree of care and the negli-

gence of a defendant, unless in exceptional cases, is not material. To illustrate, because the distinction is narrow in basis and operation, in case the appellant had applied to the eastern side of the wall, after the columns and trusses were placed, powerful presses for the purpose of moving it and the natural and obvious effect of the moving was a collapse, it would have committed a wrongful act, because it intended the dangerous condition, violated the absolute duty of refraining from intentionally moving the wall, created a nuisance and been absolutely liable, regardless of the degree of care with which the presses were placed and applied, to a third person rightfully upon the structure and injured by its collapse. If the filling of the excavation upon the east of the wall, hereinafter described, were for the purpose and with the intention of pushing the wall into the deflection, the appellant caused the nuisance; if it were for the purpose of obliterating the excavation, the appellant did not cause a nuisance, unless it obviously and almost certainly to a reasonably prudent man would have deflected the wall, and a lack of requisite care would be the sole basis of its liability. (*Hogle* v. *Franklin Manfg. Co.,* 199 N. Y. 388; *Engel* v. *Eureka Club,* 137 N. Y. 100; *Lamming* v. *Galusha,* 135 N. Y. 239.)

We turn to the evidence to ascertain whether or not each of the three essential facts has support therein. It may be stated, without discussion, that it permitted the jury to find that the structure was inherently and imminently dangerous and that the acts of the appellant aided, at least, in creating that condition. It did not, however, tend to prove that the creation of the dangerous condition was a purpose or object of the appellant, or within its intention, either actually or through implication. The jury, viewing the evidence most favorably to the plaintiff, might have found as to the features material here: The original plans and specifications for the construction of the building were prepared by an inde-

pendent architect, were approved by the proper municipal authorities, and were safe and adequate. The building was three hundred and sixty-four feet in length, north and south, and one hundred feet wide, east and west. In essentials it was constituted of the foundation walls, steel columns placed upon and firmly and strongly bolted to the east and west foundation walls, and trusses crossing from the top of each column to the top of its opposite column, and firmly and strongly bolted at their ends or "heels" to the columns. The foundation walls, columns and trusses formed, therefore, what may be termed a rigid unit. The foundation walls (except the west one, of which further mention need not be made), were in height thirty-eight feet, of which twenty feet were below the natural surface of the contiguous ground. The columns upon each side were twenty-three in number, at equal distances from each other, and fifty-two feet high. The spaces between them were filled with brick construction, having no effect in the stability of the building. The collapse of the building was caused by the deflection inward or toward the west of the east foundation wall, whereby the trusses were caused to buckle or bend sidewise. The deflection of the east wall was caused by the manner in which the excavations made in constructing and contiguous to it were filled, aided by the omission of certain projection walls and the driving of piles near to and upon the east of it.

In August, 1907, the Buffalo Dredging Company contracted with the city to construct the foundation walls. A civil engineer in the employ and in behalf of the city laid out the lines for the walls and superintended their entire construction, which was completed in November, 1908. They were built as planned, except that three projection walls, to be built at a point about one hundred feet from either end of and at right angles with and east of the east wall, of concrete, as a part of and with the wall, at narrow spaces from each other, from the rock bed to

nearly the height of the wall, two feet in width and to a distance eight feet and eight inches from the wall, were omitted under the direction of the engineer in charge and with the knowledge and consent of the city.  Upon the completion of the foundation walls, there was an excavation upon each side and from very near the bottom of the east wall, about ten feet wide at the bottom and gradually widening to forty feet at the ground's surface. The east excavation was filled to the height of twenty feet by the appellant in 1909.  Subsequently, the appellant filled the interior excavation to the same height and thereafter raised the filling against and east of the wall to within a few feet of its top, but did not at any time raise the inside filling.  The filling was done under the direction of the engineer in charge for the appellant.  In February, 1910, the engineer discovered that the east wall had in it cracks and from a point near either end to a point near the other end was bowed or deflected inwards. The deflection increased until March, 1910, when it was six and five-sixteenths inches at its maximum.  Thereupon the appellant, under the direction of the engineer and architect and superintendent of construction, built against and attached to the inside of the wall a buttress opposite each column.  The buttresses were intended to prevent any further movement of the wall, but were ill-planned and ineffective.  From May, 1910, until the collapse in June, 1910, the superstructure was in course of construction.  In August, 1910, a foreman of a subcontractor discovered that the deflection at its maximum was eight and one-half inches; at the time of the collapse it was nine and three-quarters or ten inches, and the deflection of the columns upon the east wall was at its maximum two inches from the straight line in which they were originally placed.  Early in 1911 piles were driven as substitutes for the projection walls, which increased slightly the pressure of the filling against the east wall.  After the buttresses were built the engineer

for the city took no part with reference to the construction, and the appellant had no inspector or supervisor thereof other than the architect. If the projection walls had been built and the excavations simultaneously filled, the building would not have fallen. The architect and the contractors, subcontractors and workmen upon the building deemed it safe and above suspicion. There was evidence tending to prove defects in the metal construction, but they were not chargeable to the appellant as acts creating a nuisance and their description is not necessary. We do not find in these facts or in the evidence within the record proof that the acts of the appellant were with the consciousness or intention that they would cause the deflection of the wall or create the dangerous condition or that they obviously would create it. The direct and undisputed testimony and reasonable inferences are to the contrary. They may have been negligent, but do not, in connection with the proof of the deflection and the collapse, fix an absolute liability upon the appellant. The trial court erred in denying the appellant's motion that the plaintiff be nonsuited.

There was error also in the charge of the court, assuming that there was evidence proving the appellant liable for a nuisance. In the main charge the jury were instructed that the appellant was responsible, if at all, on account of the foundation wall and upon the findings that after the steel structure was put upon the foundation wall it deflected before the collapse and the deflection caused the collapse. In response to a request by the plaintiff's counsel the court said: " I have already charged you, gentlemen, that if you find that the east foundation wall did deflect after the steel structure was placed upon it, and before the collapse, and that was one of the causes of the collapse, then you have a right to find against the city." Upon exception by the appellant's counsel the court added: "If you find at the same time, gentlemen, that the deceased was guilty of no contributory negligence,"

and appellant's counsel said: "I still except." A fair construction of the entire charge permits the conclusion that the jury were instructed, in addition to the instruction quoted, that they must, in order to render a verdict against the appellant, find that the structure was a menace, in the creation of which the appellant must have participated, but does not permit the conclusion that the jury were instructed that they were required or permitted to consider or find in regard to the purpose for or the intent with which the acts of the appellant were done. The charge made the liability of the appellant absolute in case the structure was in a dangerous condition, which the appellant aided in causing, and which caused the collapse. From what we have already written, it is manifest the jury were erroneously instructed.

Under the complaint and the charge of the court, it is not necessary to determine the effect of the city ordinance received in evidence.

The judgment should be reversed and a new trial granted, with costs to abide the event.

WILLARD BARTLETT, Ch. J. (concurring). The legal propositions determinative of this appeal seem to me to be these.

Where the charge of maintaining a dangerous nuisance is based upon the fall of an improperly constructed building, it must appear, in order to render the owner thereof liable as such (1) that he *intended* it should be constructed in the manner that proved to be improper; (2) that he knew or ought to have known that such manner of construction was improper; and (3) that such improper construction caused the injury complained of.

Where the injury is due, not to improper construction inherent in the plan, but to the failure to construct in accordance with a proper plan, the liability of those who thus fail to follow the plan sounds in *negligence* and not in *nuisance*.

Where injury is due to improper construction inherent in the plan, a municipal corporation owning the building may nevertheless avoid liability for its fall if it appear that the plan was prepared for it by a competent independent architect, upon whose judgment and advice the municipal officers relied, unless the plan was so obviously bad as to suggest insecurity to an ordinarily and reasonably prudent owner.

Applying these doctrines to the evidence, as Judge COLLIN has done, it is plain that the plaintiff did not make out a case for submission to the jury. I concur in his opinion for reversal.

HISCOCK, CHASE, CUDDEBACK and MILLER, JJ., concur with COLLIN, J., and WILLARD BARTLETT, Ch. J., concurs in memorandum; WERNER, J., not voting.

Judgment reversed, etc.