Elmer RODGERS, Respondent,

v.

KANSAS CITY, Missouri, a Municipal
Corporation, Appellant.

No. 22900.

Kansas City Court of Appeals.
Missouri.

June 1, 1959.

Benjamin M. Powers, City Counselor,
Timothy D. O'Leary, Kansas City, for appellant.

James H. Ottman, John R. Gibson, Kansas City, for respondent.

MAUGHMER, Commissioner.

Plaintiff received a $3,500 verdict and judgment against defendant for damages

to plaintiff's store fixtures and stock of merchandise. Defendant has duly appealed.

During June and July, 1954, the defendant City of Kansas City, Missouri, was owner of the buildings which were commercial in type, located in the 300 block on West Sixth Street in said City. The City had become owner through condemnation proceedings. The purpose and plan was to clear the area and widen the street preparatory to construction of the Sixth Street Trafficway. However, during this period plaintiff was the City's tenant and lessee of the property designated as 302 West Sixth Street. He was operating a business at this location under the name Trafficway Buffet. Therein were fixtures and merchandise which were owned and being used by plaintiff in the operation of a restaurant and tavern.

Before razing the building immediately to the west and adjoining the building occupied by plaintiff, the City decided to utilize it in a series of "demonstration fire tests". During the latter part of June and the first days of July, the building was loaded with quantities of combustible materials. Among the objective purposes of these "planned fires" were the testing of equipment, observation of various methods of fire fighting, including indirect application of water, and a new type of hose nozzle. Two hundred and sixteen "fire dignitaries" from all parts of the United States were invited to attend and observe these demonstrations. On July 8, four separate fires were started and extinguished. These fires were lighted by the Chief of the Kansas City Fire Department or some one under his direction, or under the direction of Francis Wornall, Director of Fire, Kansas City, Missouri. The first fire was in the basement and the other three on the first, second and third or fourth floors of the building. Two other fires were ignited on July 9.

In the City's official report of the fire tests (Exhibit 13) it is stated that the com-

mittee experts who entered and examined the building after each fire, predicted that Fire No. 4 would cause the roof to collapse and likely "kick out" some portions of the side walls. The report continues, stating that after the fourth fire the roof did collapse "pulling in" a portion of the east wall as it fell and pushing a part of the west wall out to fall on the adjoining lot. On July 9, 1954, the City served on plaintiff a written notice to "cease and desist using the above location for business and stay out of the premises until damaged wall on. west side is made safe or be subject to penalty for violation of City ordinance." This notice was signed by the City Building Inspector, and served on the day after the first four fires. No earlier notice or notification was given to the plaintiff.

Plaintiff testified that soon after the first fire was started in the basement "smoke started coming through there and kind of fogging the joint up and there was no customers in there anyway so I locked up and went out to join the other people in watching the fire." He said he did not re-enter his building until early in the evening after the burglar alarm went off as it does when windows are broken. He then went inside and observed conditions. Plaintiff stated that bricks from the fired building had fallen on his roof; that some came through the roof, had broken his bar and that water was entering through the holes. He said: "The more water they poured on that building, the more water came in my place." None of the fires ever escaped and got. into the building which plaintiff occupied. The plaintiff estimated his damage at $3,500. He sued for that sum and had a verdict and judgment for that amount.

Appellant City makes no claim that plaintiff was not damaged, nor does it assign as error the amount allowed as damages. Two assignments of error are presented: (1) That the court erred in overruling motion for directed verdict for the reason that any damage plaintiff sustained was the result of activities by the Kansas City Fire Department, acting in its govern-

mental capacity and for this reason the City is not liable. (2) The court erred in giving plaintiff's Instruction No. 1 for the reason that such instruction does not require a finding of negligence by the city but only that it intentionally set the fires and as a direct result plaintiff was damaged.

Plaintiff's petition contains four counts. Count 1 charged that the fire was deliberately and wrongfully set and with reckless disregard of plaintiff's rights. Count 2 reiterated the charges in Count 1 and in addition alleged that defendant repeatedly ignited fires. Count 3 charged that the defendant carelessly and negligently ignited the fires, but failed to warn plaintiff. Count 4 contained an allegation that plaintiff lost business profits, and the value of his leasehold was lessened. The defendant City, by its answer, admitted setting the fires but as to each count pleaded that such action was a governmental act for which it was not liable. From the record it appears the case was submitted to the jury generally and not restricted to any particular count.

Instruction No. 1 is the only verdict-authorizing instruction given. For this reason and because defendant claims that its giving was erroneous in that it did not require a finding of negligence on the part of defendant, but merely required the jury to find that defendant intentionally set the fires, and that as a direct result thereof plaintiff was damaged, we set out the instruction in full:

"Instruction No. One

"The Court instructs the jury that if you find and believe from the evidence that at the time the fires mentioned in evidence were set by the Fire Department of Kansas City, Missouri, Elmer Rodgers was a tenant of the premises at 302 West Sixth Street, Kansas City, Missouri, renting such building from the City on a month-to-month basis, and that on or about July 8 and 9, 1954, the city of Kansas City, Missouri, acting by and through its servants, agents and employees, the members of the Kansas City Fire Department, deliberately and intentionally set several fires in the four-story building immediately west of the building Elmer Rodgers was renting, if so, and that prior to the Fire Department so deliberately setting said fires, if so, said Fire Department had placed in the basement and in all four floors a wide variety of ordinarily combustible materials, if so; and if you further find that as a direct and proximate result of the Fire Department of Kansas City, Missouri so deliberately and intentionally setting said fires and fighting or extinguishing said fires, if so, the contents of the building located at 302 West Sixth Street owned by Elmer Rodgers, if so, were damaged, then your verdict will be in favor of the plaintiff, Elmer Rodgers, and against the defendant, Kansas City, Missouri."

■ On appeal the City contends that plaintiff's petition is founded on negligence and not on nuisance, but that Instruction No. 1, the only verdict-directing instruction given, submitted the case only on nuisance. In Martin v. City of St. Joseph, 136 Mo. App. 316, 117 S.W. 94, 95, the same contention was made and this court said: "It is insisted by defendant that plaintiff's cause of action is based on negligence, whereas, he was permitted to recover on the theory that it was an action for a nuisance. The facts upon which plaintiff relies are set forth in his petition, but it fails to allege in terms that they constituted a nuisance. Although the petition alleged that the embankment was negligently raised by the railway company, and that it has been negligently so maintained that said culvert was negligently built and maintained by defendant and too small to accommodate the flow of the water in the stream, and that defendant allowed it to be choked with debris, yet we cannot see why the acts complained of do not amount to a nuisance. A nuisance is: 'Anything that

worketh hurt, inconvenience, or damage. A private nuisance is anything done to the hurt or annoyance of the lands, tenements or hereditaments of another.' Bouvier's Law Dictionary. Under our system of code pleading, it could make no difference in this case whether we call the action one of negligence or nuisance, as the relief would be the same. Rev.St.1899, § 592 (Ann.St.1906, p. 612)."

The same question was recently passed on with a compilation of some intervening authorities in Divelbiss v. Phillips Petroleum Co., Mo.App., 272 S.W.2d 839, 843, and as follows:

"Defendant's second criticism of the instruction is that it did not require the jury to find the existence of a nuisance. In answer to a similar contention the court in Clark v. City of Springfield, Mo.App., 241 S.W.2d 100, 107, said:

" 'Further objection is made to Instruction No. 1 because it did not state that the acts complained of constituted a nuisance. *It was the jury's duty to pass upon the facts. Whether or not the facts they found constituted a nuisance was a question of law.* Pearson v. Kansas City, 331 Mo. 885, 55 S.W.2d 485; Smiths v. McConathy, 11 Mo. 517, and it was entirely without the jury's province to pass upon that question. Whether a nuisance existed depends upon the facts pleaded, proved and instructed upon and not upon a conclusion born from the use of the word. Martin v. City of St. Joseph, 136 Mo.App. 316, 117 S.W. 94.' (Emphasis ours.)" We hold that plaintiff's petition, even though not specifically charging nuisance, alleged a state of facts which insofar as the pleading is concerned, justified submission upon that theory.

The appellant City cites numerous authorities holding that: "The extinguishment of fires is a function which a municipal corporation undertakes in its governmental capacity" and that the operation by a city of a fire department is a governmental function. We agree generally that such is the law although we find no cases

definitely extending that mantle of protection to fires deliberately set by the municipality. However, it seems reasonable to view the use of experimental fires for the purposes of testing equipment and methods of fire fighting as proper functions of an expert fire department and a municipality. In this case, therefore, we shall consider the City's action as the exercise of a governmental function although we do not specifically so hold.

Defendant follows this premise, as it necessarily must, by asserting that it is not liable in damages for negligent acts of omission or commission in connection with such governmental activities. Our attention is invited to the following cases where the city was held not liable for damages: To Richardson v. City of Hannibal, 330 Mo. 398, 50 S.W.2d 648, 84 A.L.R. 508, where personal injury resulted from a collision between a city fire truck and plaintiff's vehicle, where defendant's truck took a "short cut" to the scene of a fire; to McKenna v. City of St. Louis, 6 Mo.App. 320, where a child was killed by negligent operation of a hose carriage; to Pearson v. Kansas City, 331 Mo. 885, 55 S.W.2d 485, in which plaintiff was injured through negligent operation of a police station elevator, and to Hinds v. City of Hannibal, Mo., 212 S.W.2d 401, where the city was held not liable for selecting and retaining a vicious character as a policeman.

These cases differ from the case before us in three important particulars: First: The claims for damages were based on injuries to the person rather than to property. That our Missouri courts recognize such a distinction is shown by the following quotation from Pearson v. Kansas City, supra, one of the cases offered by defendant. There the court (55 S.W.2d at page 488) said:

"The extent of this liability and a reason for a distinction is also stated in 19 R. C.L. 1084, § 371: 'A municipal corporation as an owner of land owes the same obligations to the owners of neighboring land

with respect to the use of its own, except so far as it has specific authority from the legislature to the contrary, as that of any private owner of land, and it is accordingly well settled that if a municipal corporation makes such use of its own land as to constitute a private nuisance at common law it is liable to the owner of land specially injured by such nuisance, without regard to the character of the use which the municipality is making or whether it is engaged in a governmental or private function. The reason underlying this rule, which seems to throw greater protection over real estate than over personal safety, although it has seldom been expressed by the courts, is doubtless not so much the sanctity of private rights in real estate as that the permanent use of real estate owned by a municipal corporation is a matter within the control and observation of the governing body of the corporation, and not merely of the subordinate officials in charge of the particular piece of property, so that a creation of a nuisance may fairly be called the act of the corporation itself, whereas the defective condition of public property by reason of which an individual suffers personal injuries is usually due to the negligence of an individual caretaker, for which the municipality may not be liable.' "

In the Annotations on the subject of "Nuisance: Municipal Liability", 75 A.L. R. 1196 and 56 A.L.R.2d 1415, but essentially restricted to liability for personal injuries, the fact that many courts have made such distinction is recognized. The latter annotation declares the majority view imposes liability for both personal injuries and property damage, but lists Missouri as a doubtful jurisdiction on extension of liability to personal injuries. The Annotation summarizes this way: "Although some courts engage in chipping away bit by bit at the doctrine of governmental immunity from one point of view or another where distinctions, defensible or indefensible, are seen, the general doctrine is so firmly imbedded in the law that the so often repeated judicial statement that correction must come from the legislature appears to advance the only comprehensive solution now possible."

Second: In the cases presented by the City the damages resulted from either the negligence of some individual or failure to repair or properly maintain, rather than the positive wilful creation of a dangerous nuisance.

■ We again refer to Pearson v. Kansas City, supra (55 S.W.2d at pages 489–490) as showing our Missouri courts recognize that such differences lead to different results:

"It is, of course, possible for the same act or omission to 'constitute negligence and also give rise to a nuisance.' 45 C.J. 639, § 9. See, also, Schindler v. Standard Oil Co., 207 Mo.App. 190, 232 S.W. 735; Shelley v. Ozark Pipe Line Corp., 327 Mo. 238, 37 S.W.2d 518, 75 A.L.R. 1316. There must, however, be a degree of danger (likely to result in damage) inherent in the thing itself, beyond that arising from mere failure to exercise ordinary care in its use before the question of a nuisance can properly be submitted to a jury. 'The question as to what constitutes a nuisance is one of law for the court; but it is for the jury to decide whether a particular act or structure or use of property, which is not a nuisance per se, is a nuisance in fact.' 46 C.J. 812, § 469. Of course, this condition of inherent or intrinsic danger may arise either from original improper construction of a structure or from such a deterioration thereof from neglect as to warrant the conclusion that an inherently dangerous condition is intentionally permitted to exist. As said in one case (where the wall of a building collapsed), Herman v. City of Buffalo, 214 N.Y. 316, 108 N.E. 451, loc. cit. 453: 'This is not declaring that it must have intended the danger or the catastrophe. It must have intended the condition, but, having that intention, may have thought it was not dangerous or have been thoughtless in regard to it. It must have violated the absolute duty of refraining from the participating acts, not

merely the relative duty of exercising reasonable care, foresight, and prudence in their performance. The wrongfulness must have been in the acts themselves, rather than in the failure to use the requisite degree of care in doing them, and therein lies the distinction, under the facts of this case, between "nuisance" and "negligence" ' ".

Third: In these cases the negligence (like retaining the vicious policeman) and where the city neglected to raze a dangerous building owned by a private citizen, although empowered to abate such condition, is passive, where as in our case the dangerous condition—the nuisance—was created originally by the City and is the result of positive, affirmative acts.

In Hinds v. City of Hannibal, Mo., 212 S.W.2d 401, 402, our Supreme Court said: "Immunity from tort liability for acts of public officers in the exercise of governmental functions is not retained in this country to perpetuate the idea that the king can do no wrong, as plaintiff suggests. The principal reason for it is that the general rules of respondeat superior cannot be applied to public officers without opening up unlimited possibilities for wasteful and dishonest dissipation of public funds. Brown v. City of Craig, 350 Mo. 836, 168 S.W.2d 1080. Public funds are trust funds and public policy does not permit them to be diverted from the purposes for which they are raised by taxation."

"The term 'nuisance,' derived from the French word 'nuire,' has been regarded as incapable of precise definition so as to fit all cases; * * * The term signifies in law such a use of property or such a course of conduct as, irrespective of actual trespass against others or of malicious or actual criminal intent, transgresses the just restrictions on use or conduct which the proximity of other persons or property in civilized communities imposes on what would otherwise be rightful freedom." 66 C.J.S. Nuisances § 1, p. 727.

"A municipal corporation has no right to create, erect, or maintain a nuisance; it has no greater right in this respect than an individual; and where it creates, maintains, permits, or participates in, or contributes to, the creation or maintenance of a nuisance by nonfeasance or misfeasance it is guilty of tort, and like a private corporation or individual, and to the same extent, is liable for damages in a civil action to any person suffering special injury therefrom, irrespective of the question of negligence." 63 C.J.S. Municipal Corporations § 770, p. 67.

"A nuisance does not rest on the degree of care used, * * * but on the degree of danger existing even with the best of care". 20 R.C.L. 381.

"The fact that a municipality in setting fire to an unoccupied building for the purpose of abolishing a public nuisance by burning it was acting in its political or governmental capacity does not necessarily exempt it from liability for damages occurring when the fire spread to an adjoining building, where it was guilty of active wrongdoing, as distinguished from negligence, resulting in the creation of a temporary nuisance." 63 C.J.S. Municipal Corporations § 776, p. 84.

In Windle v. City of Springfield, 320 Mo. 459, 8 S.W.2d 61, 62, the City was held liable under the nuisance theory for constructing a sewer which percolated adjoining land, contaminated plaintiff's spring and ladened the air with foul odors. The court said: "However uniform, the rule may be as to the nonliability of a municipality for acts in the exercise of its governmental or legislative capacity, it does not apply when the municipality makes such a use of its own land after the construction of the sewer as to constitute, as at bar, a private nuisance."

In McCleery v. City of Marshall, Mo. App., 65 S.W.2d 1042, this court approved recovery for plaintiff where the sewer polluted a stream of water on plaintiff's land and filled the air with foul odors. The City contended that the situation was only temporary and it planned to channel the sewage into a different permanent outlet in time.

The court held, however, that the situation constituted a nuisance; that it was a permanent one for the purposes of the lawsuit, and that damages were recoverable.

The Annotation (75 A.L.R. 1192, supra) quite instructively reviews the law and reason on these questions. The particular case which provided the subject of the study is Hoffman v. City of Bristol, 113 Conn. 386, 155 A. 499, 500. In this case the City installed a diving board above shallow water—some three feet deep—at a bathing beach in a park owned and maintained by it, with no signs or warning of the shallow water, the depth of which was not clearly visible. Plaintiff dived from the board and was injured. His petition alleged (1) Negligence in maintaining such diving board without warning of its danger and (2) That the same was "inherently dangerous and unsafe." The Supreme Court of Connecticut approved a recovery for these personal injuries and, quite important for our purposes, discussed municipal immunity and nuisances. We quote in part from the opinion:

"As to the cause of action based upon negligence, it is manifest that the facts of the special defense suffice to relieve the defendant from liability, through the immunity which we have recognized as attaching to the performance by a municipality of a public duty, for the public benefit, and not for its own corporate profit. Carta v. City of Norwalk, 108 Conn. 697, 701, 145 A. 158; Hannon v. City of Waterbury, 106 Conn. 13, 136 A. 876, 57 A.L.R. 402. It remains to be considered whether the same defense is efficacious to defeat recovery upon the cause of action grounded on nuisance.

"Where a municipal corporation creates and maintains a nuisance, it is liable for damages to any person suffering special injury therefrom, irrespective of whether the misfeasance or nonfeasance causing the nuisance also constituted negligence. This liability cannot be avoided on the ground that the municipality was exercising governmental functions or powers, even in jurisdictions where, as here, immunity is afforded

from liability for negligence in the performance of such functions. 6 McQuillan on Municipal Corporations, 815 et seq.; 43 Corpus Juris, p. 956. 'If the natural tendency of the act complained of is to create danger and inflict injury upon person or property, it may properly be found a nuisance as a matter of fact; but, if the act in its inherent nature is so hazardous as to make the danger extreme and serious injury so probable as to be almost a certainty, it should be held a nuisance as a matter of law.' Melker v. City of New York, 190 N.Y. 481, 488, 83 N.E. 565, 16 L.R.A.,N.S., 621, 13 Ann.Cas. 544.

" * * * In Colwell v. Waterbury, 74 Conn. 568, at pages 572, 573, 51 A. 530, 532, 57 L.R.A. 218, it was stated that the rule which exempts municipalities from liability when they or their servants are acting in the discharge of a public duty does not relieve them 'from liability for the consequences of the particular acts which the municipality has directed to be performed, and which from their character, or the manner in which they are so ordered to be executed, will naturally work a direct injury to the property of others, or create a nuisance, or occasion a wanton injury to the property or rights of other persons.' "

The Hoffman opinion then distinguishes its facts from cases cited therein by the City as follows:

"In the Hewison case [Hewison v. City of New Haven, 37 Conn. 475], the weight overhanging the street, in the Dyer case [Dyer v. City of Danbury, 85 Conn. 128, 81 A. 958, 39 L.R.A.,N.S., 405], the dead tree within the street limits, in the Riccio case [Riccio v. Town of Plainville, 106 Conn. 61, 136 A. 872], the tree protruding over the highway, in the Rogers case [Rogers v. City of Meriden, 109 Conn. 324, 146 A. 735], the catch-basin cover, if constituting a nuisance, was such that the only duty of the city was to remove or abate it. It was not a structure or condition created by the city, certainly not by the acts which were wrongful in nature or in intent actual or implied; the

fault, if any, consisted in the failure to use the requisite care in remedying a condition otherwise created or occurring. Therein lies the distinction between nuisance to which governmental immunity does not attach, and mere negligence as to which it is available. Herman v. City of Buffalo, 214 N.Y. 316, 108 N.E. 451."

The Annotation then makes reference to numerous authorities in support of these views. We quote briefly (at page 1197):

"It seems that 'the state's lordly prerogative of wrongdoing' (John M. Maguire, "State Liability for Tort", 30 Harvard L.Rev. 20, 37) is not absolute where property rights are involved.

\*     \*     \*     \*     \*     \*

"Thus, in [City of] Seattle v. Lloyd's Plate Glass Ins. Co., [9 Cir.], 1918, 253 F. 321, 165 C.C.A. 103, affirming the liability of a city for damage resulting to property by reason of the acts of its port warden in causing dynamite to be kept at a place prohibited by an ordinance of the city, and recognizing the distinction between mere negligence and acts creating a nuisance, the court said: \* \* \* 'But we think it is clear that such a corporation has no right to create a public nuisance, and that, if it does so, it is liable for the resultant damage.' "

In Adams v. City of Toledo, 163 Or. 185, 96 P.2d 1078, 1080, the Supreme Court of Oregon ruled a case somewhat like ours, at least on reasoning. In that case the city directed its fire department to destroy a certain two-story frame building, which was filled with dry wooden boxes, paper and other inflammable rubbish for the reason same was a fire menace and hazard. Pursuant to such instruction the city fire department destroyed the condemned building by burning. Flames from this fire ignited plaintiff's building which was located close by and destroyed it. The trial court sustained a demurrer on the basis that the city was acting in its governmental capacity and hence not liable. The Supreme Court reversed and said:

"We agree with defendant city that in abating the public nuisance said city acted in its political or governmental capacity.

"Said city contends that it is immune from liability for the negligent manner in which a governmental or political act is performed.

\*     \*     \*     \*     \*     \*

"Moreover, there are exceptions to the rule that a city is immune from liability for the manner in which it performs a governmental act. One of these exceptions is that, even, in the performance of a governmental act, if the municipality is guilty of active wrong doing, there is no immunity for damages resulting from such active wrong doing. Allas v. Borough of Rumson, 115 N.J.L. 593, 181 A. 175, 102 A.L.R. 648, and cases there cited.

"Another exception arises where a municipal corporation creates and maintains a nuisance. Hoffman v. City of Bristol, 113 Conn. 386, 155 A. 499, 75 A.L.R. 1191, and cases cited in Annotation, beginning at page 1196, ibid.

"In effect, it is charged in the amended complaint herein that under the authority and direction of the common council of the city of Toledo, after having saturated dry wooden boxes, paper and other inflammable rubbish, in said unoccupied building, with a large quantity of gasoline, kerosene or other inflammable liquid, the fire chief of said city kindled and set a fire in said material for the purpose of destroying said building. Such a course was active wrong doing, as distinguished from negligence; and the result was to create a temporary nuisance. \* \* \* A city has no more right than an individual to create a nuisance and if it does so, it is subject to the same liability as an individual."

In our particular case the City, for almost a month, deliberately stored combustibles in its building which adjoined the building housing plaintiff's business. The plaintiff then and there was the city's paying tenant. Its planned and prearranged purpose was to start and extinguish not just one, but many

experimental fires. It planned to pour, with considerable force, large volumes of water upon the building and upon the fires. After the third fire the city experts inspected the gutted structure and predicted that the fourth fire would cause the roof to fall and the walls to cave in. Such predictions proved to be correct—the roof did fall and the walls did cave in. Two additional burnings were held on the ensuing morning. The fire chief and other experts called the "test fires" completely successful. There were no errors or mistakes made in the performances. Performance was completely in accordance with plan.

■ Plaintiff alleged that such acts were done with "reckless disregard for and indifference to the rights of plaintiff." This charges a nuisance under the authorities referred to herein even though it did not specifically so name it. We can see some reason to exempt a municipality from the negligent operation of a fire truck rushing to the scene of a fire to save property and prevent spread of the conflagration, but none to exempt a city for damage caused by deliberately loading its building with combustibles for a period of nearly thirty days with the intention of setting off a series of fires, thereby exposing its own tenant and occupant of the adjoining building to practically certain property damage from fire, water and falling debris, and then carrying out the plan with such foreordained and certain results. Such a planned design and executed event amounts not only to negligence, but constitutes a nuisance.

We believe the petition was founded in part, upon nuisance; that the undisputed facts here show that defendant's actions were not only careless and negligent, but were wanton, were in studied disregard of plaintiff's property rights and authorized the court to hold that such acts constituted a nuisance as a matter of law. Divelbiss v. Phillips Petroleum Co., supra; Pearson v. Kansas City, supra. As to Instruction No. 1, the City asserts that specifically it should have required a finding of negligence and asserts indirectly that even if plaintiff had pleaded and proved facts amounting to a nuisance, the jury should have been required to affirmatively find nuisance.

■■ As to damages based upon negligence it is manifest that a finding of negligence by the jury would not suffice to impress a judgment on defendant since in the performance of a governmental act, a municipality is not liable for simple negligence alone. Therefore, there was no reason to submit the issue of negligence to the jury. As to the implied second criticism we see no reason for submitting to the jury the legal question of "nuisance" or "no nuisance". As stated in the Divelbiss opinion, supra, "Whether a nuisance existed depends upon the facts pleaded, proved and instructed upon and not upon a conclusion born from the use of the word". [272 S.W.2d 843.] The instruction required the jury to find the facts, namely, the plaintiff's tenancy, the deliberate and intentional setting of the several fires, the loading of the burned building with combustibles, and that plaintiff's damages were the direct and proximate result. The court, in effect, held that if such fact findings were made, then as a matter of law, defendant was responsible under the nuisance theory. We believe that where, as here, the danger was extreme and damage to plaintiff so probable as to be almost a matter of certainty, it should be held to be a nuisance as a matter of law. It follows from what we have said that the court did not err in overruling defendant's motion for directed verdict or in giving Instruction No. 1.

No other assignments having been presented and the Court believing the finding is in accordance with simple and substantial justice, the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.